UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

TOMMY LEE CURRY,

          Plaintiff,          Case No. 1:11-cv-62

v.                                          Honorable Robert Holmes Bell

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed on immunity grounds and for failure to state a claim.

## Factual Allegations

Plaintiff currently is incarcerated in the Charles Egeler Reception and Guidance Center. In his *pro se* complaint, Plaintiff sues the Michigan Department of Corrections (MDOC), MDOC Director Patricia Caruso, the Kalamazoo Probation Enhancement Program (K-PEP), MDOC Parole Agent Sherron Rimpson, and Sex Offender Therapists Eliezer Joseph and Judith St. Louis.

In 1996, Plaintiff pleaded guilty in the Kent County Circuit Court to first-degree criminal sexual conduct (person under 13) and was sentenced to imprisonment of fifteen to sixty years. On August 17, 2010, Plaintiff was released on parole for a twenty-four-month term to expire on August 17, 2012. As a special condition of parole, Plaintiff was required to live at the Kalamazoo Probation Enhancement Program (K-PEP) and to complete the Residential Sex Offender Program (RSOP). (See MDOC Parole Board and Commutation Board Order for Parole (Parole Order), Special Condition 3.4, Page ID #14). The parole order also required Plaintiff to "waive confidentiality and allow any treatment program that you are required to attend to disclose information to the field agent." (See Parole Order, Special Condition 3.5, Page ID#13).

On October 13, 2010, Plaintiff was charged with violating special condition 3.4 because he failed to complete the RSOP program. (See Parole Violation Report, Page ID #15.) The parole violation report explained that Plaintiff initially refused to complete and sign the Sex Offender Treatment Contract, Release Authorization and other intake information because he did not wish to share information about his criminal and sexual history, family members, etc. Defendant Rimpson met with Plaintiff on two occasions to review the conditions of his parole before Plaintiff ultimately signed the documents. (See Parole Violation Report, Page ID #16.) Defendant Joseph contacted Defendant Rimpson on October 12, 2010, and requested that Plaintiff be unsuccessfully discharged

from the RSOP because Plaintiff continued to have challenges with being honest about his crime. Plaintiff was arrested and charged with the parole violation on October 15, 2010. Following a preliminary parole violation hearing on October 25, 2010, the hearing officer found probable cause for the charge. (See Preliminary Parole Violation Hearing, Page ID#34.) Plaintiff does not allege whether final revocation hearing has been held.

In his complaint, Plaintiff claims that Defendant Rimpson improperly forced him to sign the waiver of confidentiality for the RSOP by telling Plaintiff that he would be violated and sent back to prison if he did not sign the waiver. Plaintiff further alleges that after Rimpson received Plaintiff's records, he improperly shared them with employees at K-PEP and the RSOP for use in Plaintiff's treatment. Plaintiff also claims that K-PEP's RSOP put him at risk because the program and therapists are not properly certified for sex offender treatment. According to Plaintiff, the parole board could not require him to complete a program that was not certified. Plaintiff also claims that he was denied use of a law library or assistance in obtaining law library materials while at K-PEP in violation of his right of access to the Courts.

For relief, Plaintiff seeks an order requiring all of his records, files, and program material be removed from Berrien/Benton Harbor Parole Office and K-PEP. He also seeks an unspecified amount of monetary damages.

## Discussion

### I. **Immunity**

As an initial matter, Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or

Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. Mar. 12, 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the MDOC will be dismissed.

II. **Failure to State a Claim**

Plaintiff does not directly challenge the revocation of his parole or seek release from prison. However, Plaintiff's claim that the parole board could not require him to complete the RSOP as a condition of his parole indirectly challenges the revocation of his parole based upon his failure to complete the RSOP. To the extent Plaintiff challenges the revocation of his parole, a challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 493 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Because a challenge to the fact or duration of confinement may not be brought in an action

under § 1983, it must be dismissed. *See Barnes v. Lewis*, No. 93-5698, 1993 WL 515483, at *1 (6th Cir. Dec. 10, 1993) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *Moore v. Pemberton*, 110 F.3d 22, 23-24 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include: (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253(c), (4) differing fee requirements, and (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)).[1]

To the extent Plaintiff raises claims that are properly presented under § 1983, he fails to state a claim upon which may be granted. A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted

---

[1]Before the Court may grant habeas corpus relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, ___ F.3d ___, 2010 WL 5288892, at *2 (6th Cir. Dec. 28, 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff appears to attack the validity of the confidentiality waiver he signed for purposes of the RSOP. While Plaintiff contends that Defendant Rimpson "forced" him to sign the waiver, Rimpson presented Plaintiff with a choice between signing the waiver and participating in the RSOP and failing to fulfill the special conditions of his parole, which would result in a revocation. After considering his options, Plaintiff knowingly elected to sign the waiver and participate in program. Moreover, "'the Constitution does not encompass a general right to nondisclosure of private information.'" *Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir. 1994) (quoting *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir.1981)). Consequently, the dissemination of Plaintiff's medical records and other personal history to his parole officer and employees at K-PEP and the

RSOP did not violate Plaintiff's Fourteenth Amendment right to privacy. *See Wigginton*, 21 F.3d at 740 (holding that prison officials did not violate an inmate's right to privacy when they disclosed his HIV status to a prison correction officer); *Coleman v. Martin*, 63 F. App'x 791, 793 (6th Cir. 2003) (holding that dissemination of prisoner's mental health records to parole board does not constitute a constitutional violation).

Plaintiff also claims that he was denied use of a law library or assistance in obtaining law library materials while at K-PEP in violation of his right of access to the Courts. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, at *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). A prisoner's right to access the courts is limited to direct appeals, habeas corpus applications, and civil rights

claims. *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous). Plaintiff does not allege that he has suffered actual injury to pending or contemplated litigation concerning his direct appeal, a habeas corpus petition or a civil rights action as the result of the lack of legal materials at K-PEP. Plaintiff, therefore, fails to state a claim for violation of his right of access to the courts.

The Court also finds that Plaintiff fails to state a claim against Defendant Caruso on an alternative ground. Plaintiff does not make any factual allegations whatsoever against Caruso in his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 200 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because Plaintiff fails to even mention Defendant Caruso in the body of his complaint, his allegations fall far

short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Plaintiff appears to sue Caruso by virtue of her supervisory position as Director of the MDOC. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendant Caruso engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against her.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed on immunity grounds and for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: January 26, 2011 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE